UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
VERNON M. O'GARRA,

                              Plaintiff,                **MEMORANDUM**
                                                                    **AND OPINION**
         -against-                                       CV 16-2191 (DRH)(AYS)

NORTHWELL HEALTH, fka, NORTH SHORE
LONG ISLAND JEWISH MEDICAL HEALTH
SYSTEM, INC.,

                              Defendants.
-------------------------------------------------------------------X
**SHIELDS, Magistrate Judge:**

       This is an employment discrimination case in which Plaintiff Vernon M. O'Garra ("Plaintiff" or "O'Garra") claims that his former employer, Defendant Northwell Health ("Northwell" or "Defendant") discriminated against him on the basis of his race, age and gender. See generally Complaint herein Docket Entry ("DE") 1. Presently before the Court are the parties' discovery disputes relating to the proper scope of document discovery.

## BACKGROUND

I.     Factual Background

       Plaintiff was employed by Northwell (or its predecessor corporation) beginning in 2002. This is not Plaintiff's first claim against Northwell. In fact, in 2014, Plaintiff settled employment discrimination claims against this same employer. The present action relates to the denial of post-settlement positions. See DE 1 ¶¶ 49-50 (setting forth particular positions); see also DE 1 ¶ 53 (setting forth applications for particular positions with a different company, albeit allegedly via a related website). Plaintiff claims that he was denied these post-2014 opportunities for discriminatory reasons.

On June 25, 2015, Plaintiff filed a claim of discrimination with the New York State Division of Human Rights (the "NYSDHR"). That claim alleged direct discrimination as well as discrimination in retaliation for the making of his prior claim. On January 12, 2016, the NYSDHR issued a finding of no probable cause to believe that discrimination had occurred.

On March 22, 2016, Plaintiff received an offer of employment from a company referred to in the Complaint as "Optimum 360" to serve as its Supervisor of Patient Access Services. DE 1 at ¶ 62 (Optimum 360 is referred to in the parties' papers and hereinafter as "Optum360"). He alleges that this position is "the same position" to which he applied for "countless times" at Northwell. Id. Plaintiff took the position with Optum360, and it appears that he is presently employed there. Plaintiff states that his salary at Optum360 exceeds what he was being paid at Northwell.

II.  Prior Proceedings and the Present Motions

The parties herein have engaged in extensive Tier I and Tier II paper discovery. Despite discovery rulings made after a telephone conference held on May 17, 2017, counsel could not resolve their differences. Accordingly, they briefed the opposing cross-motions for discovery that are presently before the Court. As discussed in greater detail below, Defendant's motion seeks to have Plaintiff execute a particular authorization allowing Defendant access to certain of Plaintiff's post-termination employment records. Defendant also seeks more complete responses to discovery. Plaintiff's motion seeks additional document production and responses to interrogatories. The Court turns to the merits of both motions.

DISCUSSION

I.  Legal Standards

The scope of discovery is set forth in Rule 26 of the Federal Rules of Civil Procedure. That Rule has been amended, on several occasions, to reflect evolving judgments as to the proper scope of discovery. Over time, these amendments have been aimed at striking the proper balance between the need for evidence, and the avoidance of undue burden or expense. Pothen v. Stony Brook University, 2017 WL 1025856, *2 (E.D.N.Y. March 15, 2017). In 1999, Rule 26(b)(1) stated that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." Fed. R. Civ. P. 26(b)(1) (1999). In 2000, in an effort to curb over-discovery that took advantage of tying the term "subject matter" to the definition of the scope of discovery, Rule 26 was amended. See Fed. R. Civ. P. 26(b)(1), Advisory Comm. Notes (2000). That amendment required a party to show "good cause" before obtaining discovery that is "relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). Id.

Rule 26 was again amended effective December 1, 2015. The scope of discovery is now defined to consist of information that is relevant to the parties' "claims and defenses." Thus, the discretionary authority to allow discovery of "any matter relevant to the subject matter involved in the action" has been eliminated. Additionally, the current version of Rule 26 defines permissible discovery to consist of information that is, in addition to being relevant "to any party's claim or defense," also "proportional to the needs of the case." Id.

Information "is relevant if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Vaigasi v. Solow Mgmt. Corp., 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (quoting Fed. R. Evid. 401). Further, "[t]he party seeking the discovery must make a prima facie

3

showing, that the discovery sought is more than merely a fishing expedition." Evans v. Calise, 1994 WL 185696, at *1 (S.D.N.Y. 1994); see also Mandell v. The Maxon Co., Inc., 2007 WL 3022552, at *1 (S.D.N.Y. 2007) ("[T]he party seeking discovery bears the burden of initially showing relevance." (citation omitted)); see also Surles v. Air France, 2001 WL 1142231, at *2 (S.D.N.Y. 2001) (refusing to permit discovery where defendant had no factual basis that requests would lead to relevant evidence). It is well-established that "[m]otions to compel are left to the court's sound discretion." Mirra v. Jordan, 2016 WL 889683, at *2 (S.D.N.Y. 2016); see also Liberty Mut. Ins. Co. v. Kohler Co., 2010 WL 1930270, at *2 (E.D.N.Y. 2010) ("[A] motion to compel is entrusted to the sound discretion of the district court."). Id.

As demonstrated, the discretionary authority to allow discovery of "any matter relevant to the subject matter involved in the action" has been eliminated. Additionally, the current version of Rule 26 defines permissible discovery to consist of information that is, in addition to being relevant "to any party's claim or defense," also "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

While proportionality factors have now been incorporated into the Rule 26(b)(1) definition, those factors were already a part of Federal discovery standards, appearing in Rule 26(b)(2)(C)(iii). Those proportionality factors have now been restored to the place of their intended importance by their incorporation into the very definition of permissible discovery. See Fed. R. Civ. P. 26(b)(1), Advisory Comm. Notes (2015) (noting that amendment "restores the place of their intended importance by their incorporation into the very definition of permissible discovery. See Fed. R. Civ. P. 26(b)(1), Advisory Comm. Notes (2015) (noting that amendment "restores the proportionality factors to their original place in defining the scope of discovery,"

4

and "reinforces the Rule 26(g) obligation of the parties to consider these factors in making discovery requests, responses, or objections").

The specific proportionality factors to be assessed when considering the scope of discovery are:

- The importance of the issues at stake in the litigation;

- The amount in controversy;

- The parties' relative access to relevant information;

- The parties' resources;

- The importance of discovery in resolving issues; and

- Whether the burden or expense of the discovery is outweighed by the benefit.

Fed. R. Civ. P. 26(b).

Notably absent from the present Rule 26 is the all too familiar, but never correct, iteration of the permissible scope discovery as including all matter that is "reasonably calculated to lead to" the discovery of admissible evidence. This language was never intended to define the scope of discovery, but was intended only to make clear that the discovery is not limited by the concept of admissibility. Unfortunately, the "reasonably calculated" language has often been employed to refer to the actual scope of discovery. Clearing up this misinterpretation, the new Rule disposes of this language, ending the incorrect, but widely quoted, misinterpretation of the scope of discovery. The present definition of the scope of discovery continues to refer to admissibility, but only by stating that "[i]nformation within the scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b).

Overarching the interpretation of Rule 26, and indeed all of the Federal Rules of Civil Procedure, is the standard referred to in Rule 1 thereof. That Rule, as amended in December of 2015, requires that the Federal Rules of Civil Procedure "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding. " Fed. R. Civ. P. 1 (emphasis added). See Comment to 2015 Amendment to Rule 1 (noting that "the parties share the responsibility" to employ the rules consistently with the standards of Rule 1, and that "[e]ffective advocacy is consistent with -- and indeed depends upon -- cooperative and proportional use of procedure") (emphasis added). Judicial involvement has long been recognized as critical to the effective management of discovery. Thus, as early as 1983, the Advisory Committee explained that "[t]he rule contemplates greater judicial involvement in the discovery process and thus acknowledges the reality that it cannot always operate on a self-regulating basis." Committee Notes (2015) (referring to 1983 notes). Again in 2000, the Advisory Committee noted that it had been "informed repeatedly by lawyers that involvement of the court in managing discovery is an important method of controlling problems of inappropriately broad discovery") (Committee Notes 2000). The 2015 amendment revisits this theme, noting that the amendment "again reflects the need for continuing and close judicial involvement in the cases that do not yield readily to the ideal of effective party management," including that cases where "the parties fall short of effective, cooperative management on their own." Advisory Comm. Notes 2015.

With these standards and obligations in mind, the Court turns to the merits of the present motions.

II. <u>Disposition of the Motions</u>

    A. <u>Defendant's Discovery Motion</u>

1. <u>Motion to Compel Production of Plaintiff's Current Employment Records</u>

The issue of whether Plaintiff should be compelled to execute an authorization allowing his present employer to produce his employment records was before this Court during a discovery conference held on May 17, 2017. That conference led this Court to enter a minute order requiring defense counsel "to draft a tailored authorization for Plaintiff's subsequent employment records limited to information in connection to the decision to hire Plaintiff, including application materials such as recommendations and references as well as subsequent information regarding Plaintiff's earnings and benefits." DE 23. Defendant responded to the order by asking Plaintiff to execute an authorization for:

- Any and all documents relating to Plaintiff's salary, compensation and/or benefits associated with his employment with Optum360 and
- any and all documents related to Plaintiff's application for employment and hiring by Optum 360, including, but not limited to his resume, application, interview notes, any references or recommendations submitted on his behalf and his offer letter,
- for the time period 2016 to the present.

DE 24.

Plaintiff refused to sign the authorization drafted by Defense counsel, and now takes the position that he need not sign any authorization allowing Northwell to obtain records from Optum360. Plaintiff argues, as he did when this matter was first raised, that Defendant should not be allowed to fish through his entire personnel file. He claims that asking Optum360 to sign any authorization would alert that company to this lawsuit, and thereby subject him to possible retaliation by his current employer. DE 31 at 2; 31-1 at ¶11.

Plaintiff recognizes that the wage information sought by way of the authorization is relevant to the issue of mitigation of damages. He therefore offers to provide to Defendant tax information showing his wages and benefits, as well as his letter offer of employment. DE 31 at 2; 31-1 at ¶ 15. He also offers to provide his resume and copies of any letters of reference that he submitted to his current employer. DE 31-1 at ¶16.

There is no question as to the discoverability of documents showing wages and benefits earned at his current employer. Those documents are, as conceded by Plaintiff, relevant to the issue of mitigation of damages. See Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 53 (2d Cir. 1998). The issue is whether Plaintiff should be compelled to sign an authorization that may, as he argues, jeopardize his current employment relationship.

Plaintiff's claim for damages has put the issue of his subsequent employment earnings squarely at issue, and his concerns over the effect that an authorization might have on his current employment relationship do not override Defendant's entitlement to production of relevant information. Handwerker v. AT & T Corp., 211 F.R.D. 203, 209 (S.D.N.Y. 2002), aff'd, 93 Fed. App'x. 328 (2d Cir. April 2, 2004). Defendant need not be compelled to rely on Plaintiff's statements as to his offer and benefits. Thus, Plaintiff should be compelled to execute an appropriate authorization for salary and related benefit information. The scope of the records sought by authorization are particularly relevant here, where Plaintiff alleges specifically that the position he was offered at Optum360 is "the same position" to which he applied for "countless times" at Northwell. DE 1 at ¶ 62. Defendants are certainly entitled to discovery of information as to the nature of the job offered, Plaintiff's qualifications and his application.

In light of the foregoing, the Court grants Defendant's motion to compel Plaintiff to sign an authorization for the records of his current employer. That authorization shall be narrowly tailored. Specifically, it shall be worded as follows to authorize:

"the production of all documents showing Plaintiff's salary, compensation and/or benefits associated with his employment with Optum360 from inception to date, Plaintiff's application for his initial employment with Optum 360 including his resume, application, and any references or recommendations submitted on his behalf and his offer letter."

  B. <u>Motion to Compel Complete Copies of Documents Produced by Plaintiff</u>

Defendant argues that a large number of documents produced by Plaintiff are incomplete in that only portions of emails are produced, certain copies are cut off at the bottom, and certain pages produced appear to be portions of a larger document that was not produced (<u>i.e.</u>, page 1 of 2 or pages 1 and 2 of 4). In response, Plaintiff states that to the extent that he can find complete documents, they will be produced. DE 31-1 at ¶ 17.

Issues as to whether or not complete copies of any document are in the possession of a party are matters that the parties ought to be able to resolve without the need for Court intervention. In light of the fact that the parties here appear unable to do so, the Court hereby orders Plaintiff to review his production, and produce complete copies of all documents produced to the extent such documents are in his possession, custody or control. Fed. R. Civ. P. 34(a)(1)(A). Any such review and production, shall take place within one week of the date of this order. Plaintiff shall also state, in the form of a sworn interrogatory response, that he has complied with this branch of this order on that date. In addition, Defendant may obviously inquire as to the completeness of Plaintiff's production at his deposition.

  B. <u>Plaintiff's Discovery Motion</u>

Plaintiff's motion for discovery seeks to compel the production of additional documents and responses to interrogatories. He seeks additional responses with respect to positions Plaintiff applied for but did not get, as well as a much broader range of information. Notably, Plaintiff's requests seek information as to positions applied for prior to his 2014 settlement and broad statistical information. Defendant objects to the number of interrogatories posed as well as to the broad nature of the subject matter to as to which inquiry is made. The Court has reviewed Plaintiff's requests and Defendant's responses and, with the exception of the limited additional information set forth below, denies Plaintiff's motion as requesting information that is disproportional to the needs of this litigation.

At the outset the Court notes that in light of Plaintiff's 2014 settlement, this litigation is limited to alleged failures to promote that post-date that settlement. Indeed, Plaintiff's complaint states as much when it sets forth the positions that Plaintiff alleges were denied to him on discriminatory bases. Plaintiff's additional requests for documents, including a document indicating the racial profile of all managerial and supervisory employees from 2009-2015 (Document Request No. 18 at DE 27-4), are vastly overbroad and beyond the needs of this case.

As to the jobs that are actually at issue in this case, Defendant has already produced extensive documents and responses tailored to this action. Thus, Defendant has produced approximately 1,500 pages of documents. In particular, Defendant has provided a list of all post-settlement positions sought by Plaintiff, including the job descriptions, profiles and salary information with respect thereto.  Defendant has also identified the names of decision-makers with respect to those positions, and the names of all individuals who applied for, and were interviewed for the positions. Additionally, Defendant has produced the applications and resumes of those chosen for interviews (including Plaintiff, where applicable), and has identified

the individual who was chosen for the position. This production is extensive and proportional to the needs of this case. It is not clear to the Court, however, as to whether Defendant has (or indeed can) identify the gender, age and race of each of the applicants identified in its responses. To the extent possible, Defendants are directed to produce such information.[1]

Next, Plaintiff requests access to the entire personnel files of all individuals who applied for and received offers for the promotions to which Plaintiff applied. Personnel files are not <u>per se</u> shielded from discovery, and a protective order can usually remedy any privacy concerns. <u>Barella v. Village of Freeport</u>, 296 F.R.D. 102, 106 (E.D.N.Y. 2013). However, it remains the Plaintiff's burden to show how the requested records are relevant, material and proportional to the claims made. Defendant has, as described above, already produced extensive documentation regarding non-party applicants. It need not produce the entirety of these third-party personnel files, which likely contain irrelevant information. In any event, requiring Defendant to produce full personnel files for each applicant would amount to a disproportional fishing expedition. Thus, the request for full personnel files of all applicants identified is denied.

Plaintiff also seeks more information about decision makers – including all notes made with respect to each interview for each position that Plaintiff was denied. Defendant has already identified the decision makers and the documents underlying their decisions. Again, Plaintiff's request is disproportional to the needs of his case.

Finally, there is no indication that Defendant has engaged in any conduct amount to any spoliation of evidence, and Plaintiff's casual reference thereto is without support.

---

[1] Defendant has not, and could not possibly, produce documents or responses as to positions which Plaintiff claims to have applied, but as to which Defendant has no knowledge of any such application.

CONCLUSION

For the foregoing reasons, the discovery motions appearing as Docket Entries Nos. 26 and 29 herein are granted in part and denied in part. In summary, as set forth above, Plaintiff is directed to execute an authorization for employment records in the form and language in this order. He is also directed to review his production, and, within one week of the date of this order, produce complete copies of all documents produced, to the extent such documents are in his possession, custody or control. To the extent possible and not already produced, Defendant is directed to produce information as to the age, gender and race of individuals previously identified as applying, selected for interview and chosen for the positions identified. Defendant need not produce any other further information.

Counsel are directed to confer and to promptly agree to a schedule for all depositions. All such depositions are to be completed by April 19, 2018. All fact discovery is to be completed by May 21, 2018. The first step in dispositive motion practice, if any is to be taken by June 8, 2018.

Dated: Central Islip, New York
January 22, 2018

    /s/ Anne Y. Shields
Anne Y. Shields
United States Magistrate Judge